**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re: Alteneez Moss,

Debtor(s)

Case No.18-15361-LMI
Chapter 13

______________________________/

**DEBTOR'S RESPONSE TO MOTION FOR RELIEF FROM STAY [D.E.18 ] AND RESPONSE TO OJBECTION TO CONFIRMATION [D.E. 17 ]**

Debtor ALTENEEZ MOSS (the "Debtor" or Ms. Moss) responds and objects to Creditor Opa Property Management Corp.'s ("Landlord's") Motion for Relief from Stay [D.E. 18] because the Landlord seeks to evict Ms. Moss for the portion of rent Miami-Dade County is responsible to pay. Pursuant to the federal regulations and the lease agreement, Ms. Moss is only responsible for her portion of the monthly rent.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor Alteneez Moss is 53 years old. She is legally blind, she has physical which limit her mobility, and she has mental disabilities. Her only income is from Social Security Disability Insurance ("SSDI") and she receives $977 per month. Ms. Moss lives alone and has been a participant in the Section 8 Moderate Rehabilitation ("Mod-Rehab") Program for 17 years. The Mod-Rehab Program is a "legacy" HUD Program, administered through local public housing authorities ("PHAs"). In the 1970's and 1980's, HUD provided federal funds for private landlords to upgrade substandard rental housing, and in return, the landlords agreed to provide rental housing to very low-income families by entering into multi-year Housing Assistance Payment contracts with the local PHA. *See* 24 C.F.R. §882.101. Tenants living in a Mod-Rehab

property pay approximately 30% of their income as rent. The PHA pays the landlord a subsidy each month pursuant to a monthly Housing Assistance Payment ("HAP"). In Miami-Dade County, the PHA which administers the Mod-Rehab Program is Miami-Dade County's Public Housing and Community Development. As of 2015, there were approximately 48 Mod-Rehab properties in the County, with 2,097 units.[1]

As rent, Ms. Moss pays approximately 30% of her income minus a utility allowance. *See* 24 C.F.R. § 5.628 (a) and 24 C.F.R. § 5.634. Each year, Ms. Moss' rent obligation adjusts slightly due to small increases in her SSDI monthly payment.

In 2012, Ms. Moss rented her current unit at 110 Dunad Ave. #84, Opa Locka, FL 33504. Ms. Moss signed a lease to rent the unit from Opa Property Management Corp., and she agreed to pay $2,508 over the 12 month term of the lease, or $209 per month. The lease specifies that the County could adjust Ms. Moss' rent obligation. A copy of the 2012 lease agreement is attached as Exhibit A. From April 2017 until March 2018, Ms. Moss' monthly rent obligation was $223 and the County paid $569 as the HAP. A copy of the 2017 Rent Change Notice is attached as Exhibit B. Beginning April 2018, her rent remained at $223 and the HAP increased to $585. A copy of the 2018 Rent Change Notice is attached as Exhibit C. Additionally, a landlord in the Mod-Rehab program may only terminate a tenancy or refuse to renew the lease for good cause. *See* 24 C.F.R. §882.511(c).

Landlords in the Mod-Rehab Program must maintain decent, safe, and sanitary housing. *See* 24 C.F.R. § 882.404(a) and 24 C.F.R. § 5.703. On October 18 2017, Miami-Dade County conducted an inspection of Ms. Moss' apartment. The inspector found three violations in the unit: deteriorated wall from a water leak, defective stove burners, and an excessive amount of

[1] http://www.miamidade.gov/housing/moderate-rehabilitation.asp

personal items.[2] A copy of the October 2017 Notice of Inspection Results is attached as Exhibit D.[3] The notice states that all violations are the responsibility of the Landlord. Unlike the Section 8 Voucher Program, where inspectors attribute violations in a subsidized unit to either the tenant or the landlord, all inspection violations in the Mod-Rehab Program are the responsibility of the landlord. *See* 24 C.F.R. § 882.404(a); *Cf.* 24 C.F.R. § 982.404(a)(4).

The County conducted a reinspection of the unit on November 17, 2017. The unit failed the reinspection because of the excessive items in the apartment. A copy of the November 2017 Notice of Failed Reinspection is attached as Exhibit E. This notice, directed to the landlord, indicates that the violation is now attributable to both the owner and the tenant. However, in the Mod-Rehab Program, only the owner is responsible when units are not in a decent, safe, and sanitary condition. *See* 24 C.F.R. § 882.404(a).[4] As a result of the second failed inspection, the County abated the Housing Assistance Payments to the Landlord and the Landlord did not

---

[2] The notice identifies the personal belongings as "trash and debris" but it is undisputed that the alleged excessive items in the unit are Ms. Moss' personal items.

[3] Prior to the October 2017 inspections, Ms. Moss requested that the County transfer her to another Mod-Rehab unit. Transferring in the Mod-Rehab program can be difficult because of the limited number of units. Over the past year, the County offered Ms. Moss a few other Mod-Rehab units. She declined the offers because they were not fully accessible due to her disabilities. For example, the County offered her units which required her to walk upstairs. On April 19, 2018, Ms. Moss requested a reasonable accommodation from the County pursuant to the Fair Housing Act and Section 504 of the Rehabilitation Act. Because there was a nexus between Ms. Moss' disabilities and the alleged clutter in the unit, Ms. Moss asked the County to reinstate the HAP retroactive to November 17, 2017, as an accommodation, and allow her more time to remove items from her unit. Alternatively, Ms. Moss requested a Section 8 voucher as an accommodation because of the difficulties finding another Mod-Rehab unit which accommodates her needs. To date, the County has not provided a formal response to the reasonable accommodation request.

[4] At the hearing held in County Court, Miami-Dade County Inspection Supervisor Leonardo Figueroa testified that this designation was a mistake and all violations in the Mod-Rehab Program are attributable to the owner. (Case No. 18-1830-CC-23) (Transcript P. 37, Lns. 8-21).

receive the $569 HAP payment after November 17, 2017, or for the subsequent months. Ms. Moss continued to pay her portion of the rent, $223, to the Landlord each month.

The Landlord did not assert a non-monetary default by Ms. Moss based on the alleged existence of excessive personal items in the unit or demand cure pursuant to applicable state law. Instead, the Landlord served Ms. Moss with a three day notice to pay rent or vacate. The notice demanded $1,402, which included the unpaid HAP. Pursuant to the terms of the lease, Ms. Moss is only responsible for her portion of the rent, as set by the County. Ms. Moss is never liable for the HAP. After the notice to pay rent expired, the Landlord filed the eviction against Ms. Moss on January 19, 2018 (Case No. 18-1830-CC-23). Ms. Moss responded to the eviction for non-payment of rent by timely filing an Answer, Affirmative Defenses, Motion to Dismiss, Motion to Determine Rent, and Demand for Jury Trial.[5]

Florida Statute §83.60 (2) requires a tenant to deposit into the court registry all of the pat due rent as alleged in the landlord's eviction complaint, assert payment as a defense, or file a motion asking the court to determine the amount of rent to deposit. Ms. Moss complied with the statutory requirement by timely filing her motion to determine rent. The County Court held a hearing on April 13, 2018, to determine how much rent, if any, Ms. Moss must deposit into the court registry to go to trial and defend the case on the merits. Ms. Moss argued that she was only required to deposit her portion of the monthly rent, $223. At the hearing, two representatives from Miami-Dade County Public Housing and Community Development testified that Ms. Moss was not responsible for the HAP and that the owner is responsible for all violations in the Mod-Rehab Program. The property manager also testified that Landlord sought to evict Ms. Moss for

[5] Ms. Moss' defenses included, among others, that the notice to pay rent was facially defective because it did not comply with the notice requirement imposed by the federal regulations. *See* 24 C.F.R. § 882.511.

non-payment of the HAP. The manager also testified that the Landlord received Ms. Moss' rent check of $224 each month, but the Landlord had not cashed the checks or returned them to Ms. Moss. Fla. Stat. § 83.60(2) states, "tenants receiving rent subsidies are required to deposit only that portion of the full rent for which they are responsible pursuant to the federal, state, or local program in which they are participating." Despite the statutory language, despite the language of the lease, and despite testimony from County staff that Ms. Moss was not responsible for the HAP, the County Court entered an order requiring Ms. Moss to deposit $3,122 - which includes the unpaid HAP -- to defend her case. If Ms. Moss failed to deposit the ordered amount by April 30, 2018, the Landlord would be entitled to a default final judgment for possession. As a disabled woman with limited resources, Ms. Moss was unable to deposit the amount ordered by the County Court, and filed for Chapter 13 bankruptcy.

Ms. Moss filed her bankruptcy petition on May 4, 2018, before the County Court entered a final judgment. Ms. Moss listed the Landlord as an unsecured creditor in her schedules and listed the debt as disputed rent. Ms. Moss filed the bankruptcy to have this Court determine her liability for the disputed debt. From May through July, Ms. Moss deposited her post-petition rent into Legal Services' Trust Account because the Landlord never responded to inquiries about where Ms. Moss should send the payment. Two months after filing, on July 2, 2018, the Landlord filed its Motion for Relief from Stay [D.E. 18] and Objection to Confirmation [D.E. 17], and on July 6, 2018, filed its Proof of Claim [Claim #1]. Pursuant to the Landlord's Motion, Debtor sent her rent for May, June, and July to the address identified in the Motion for Relief from Stay. The Landlord seeks relief from stay because Ms. Moss' plan does not include the full contract rent of $808. However, Ms. Moss is only liable for her portion of the rent, $223 per month as argued below.

**The Bankruptcy Court Has Authority to Resolve This Dispute**

"If the termination of a lease has not cleared the final hurdles under state law finally and conclusively prior to the filing of a petition under Chapter 11, 13, or 7, this court has initial jurisdiction with respect to determining whether the estate has any interest in the lease, whether the automatic stay of s 362 is applicable thereto and, if so whether it should be maintained, modified or vacated, and, whether the provisions of s 365 are applicable." *Exec. Square Off. Bldg. v. O'Connor and Associates, Inc.*, 19 B.R. 143, 147 (Bankr. N.D. Fla. 1981). Pursuant to section 1334(b) of the Bankruptcy Code "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This provision creates jurisdiction in three categories of proceedings: those that "arise under title 11," those that "arise in cases under title 11," and those "related to cases under title 11." The bankruptcy court's jurisdiction is derivative of and dependent upon these three bases. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995); 1 Lawrence P. King, *Collier on Bankruptcy* ¶ 3.01[4] (15th ed.1998); *In re Toledo*, 170 F.3d 1340, 1344 (11th Cir. 1999).

A bankruptcy court has "related to" jurisdiction of a proceeding if the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.*), 910 F.2d 784, 788 (11th Cir.1990) (quoting, and adopting, the test articulated in *Pacor,*

*Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984); *In re Prestige Realty Group of Ohio & Fla., LLC*, 420 B.R. 894, 898 (Bankr. S.D. Fla. 2009).

Here, the determination of the landlord's claim and the Debtor's rent obligation should be made by this Court as the issues will affect the Debtor's estate. *See Carter v. Rodgers*, 220 F.3d 1249, 1253–54 (11th Cir.2000) (holding that bankruptcy court had jurisdiction where the outcome of a dispute concerning the sale of property that belonged to the bankruptcy estate would affect the amount of estate property available to satisfy creditors' claims), *cert. denied*, 531 U.S. 1077, 121 S.Ct. 775, 148 L.Ed.2d 673 (2001); *Matter of Munford, Inc.*, 97 F.3d at 454 (holding that bankruptcy court had jurisdiction to bar claims for contribution and indemnity by one nondebtor against another nondebtor because the claims, if allowed to be brought, would affect the amount of money in the bankruptcy estate); *Matter of Mimi's of Atlanta, Inc.*, 5 B.R. 623, 629 (Bankr. N.D. Ga. 1980), *aff'd and remanded sub nom.*, *In re: Mimi's of Atlanta, Inc.*, 11 B.R. 710 (N.D. Ga. 1981) (finding bankruptcy court had jurisdiction over landlord's action for possession).

**<u>The Bankruptcy Court is not bound by the erroneous ruling of the County Court</u>**

The Landlord implicitly argues that this Court is bound by the County Court's "Order on Defendant's Motion to Determine Rent" which found Ms. Moss liable for the monthly HAP. When determining whether a state court ruling has a preclusive effect in this bankruptcy, this Court must look to Florida res judicata law. *In re: Six*, 80 F.3d 452 (11th Cir. 1996); *Daniels v. Funding USA, Inc.*, 350 B.R. 619 (Bankr. S.D. Fla. 2006). Res judicata applies when there is a judgment on the merits between the same parties on the same cause of action. *Florida Dept. of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001). It must be a final judgment which disposes

of the case. *Donnell v. Indus. Fire & Cas. Co.*, 378 So. 2d 1344, 1346 (Fla. 3d DCA 1980). Res judicata does not apply when a court merely grants a motion. *Id.*

The County Court's order on Defendant's Motion to Determine Rent was not a final judgment which disposed of the case. Rather, it was a preliminary ruling which determined how much Ms. Moss would be required to deposit into the court registry if she wanted to defend her eviction at trial. Res judicata does not apply to the County Court's order to deposit rent and this Court does not need to give any preclusive effect to the order.

**Ms. Moss is not liable for the Housing Assistance Payment.**

The Landlord argues that because Ms. Moss' personal belongings caused the HAP abatement, she is responsible for the HAP. That is not supported by the lease agreement or the federal regulations governing the Mod-Rehab Program. The lease clearly states in paragraph 1 that Ms. Moss is liable to pay the amount of rent as set by the County. ("The total rent to be paid by the TENANT over the term of this Lease is $2,508.00, or as adjusted by the Dade County SHPD.") *See* Exhibit A. The County last adjusted Ms. Moss' rent in April 2018, and her portion of the rent is $223. *See* Exhibit C. Under the contract, Ms. Moss' liability is limited to $223 per month.

Likewise, the federal regulations do not support the Landlord's position that Ms. Moss is responsible for the HAP. The federal regulation which addresses failed inspections in the Mod-Rehab Program is 24 C.F.R. §882.516. It states:

> (c) **Units not decent, safe and sanitary.** If the PHA notifies the Owner that the unit(s) under Contract are not being maintained in decent, safe and sanitary condition and the Owner fails to take corrective action (including corrective action with respect to the Family where the condition of the unit is the fault of the Family) within the time prescribed in the notice, the PHA may exercise any of its rights or remedies under the Contract, including abatement of housing assistance

> payments (even if the Family continues in occupancy), termination of the Contract on the affected unit(s) and assistance to the Family in accordance with § 882.514(e).

The regulation instructs the landlord to take "corrective action with respect to the Family" when the condition is caused by the tenant. Florida law provides landlords with a mechanism to take corrective action when a tenant does not maintain the rental unit: a seven day notice to cure the lease violation pursuant to Fla. Stat. § 83.56. Here, it is undisputed that the Landlord never sent a statutory notice to cure asking Ms. Moss to take corrective any corrective action. Instead, it filed an eviction for non-payment of rent, incorrectly claiming that Ms. Moss was liable for the Housing Assistance Payment.

At the hearing on the Motion to Determine Rent, two witnesses from Miami Dade County both testified that Ms. Moss was not liable for the HAP. This is consistent with the lease and the federal regulations. Ms. Moss intends to call these witnesses at any evidentiary hearing related to the Motion for Relief from Stay.

The Landlord's primary argument to support Ms. Moss' liability for the HAP is language in the November 2017 Notice to the Landlord which states "<u>If any of the violations shown are the owner's responsibility</u>, then the tenant is entitled to request a change of dwelling within 21 days starting 11/17/17. If the tenant does not contact MDHA within this period and remains at the above mentioned unit, they will be responsible for the full contract rent." *See* Exhibit E. This language is not an accurate reflection of the legal obligations created by the lease or the regulations. A letter from the County to the Landlord cannot change the legal requirements of the federal regulations.[6] And, even if this was an accurate reflection of Ms. Moss' legal obligation,

[6] This appears to be an old form letter which was used when the County operated the Section 8 voucher program. First, the letter references Miami-Dade Housing Agency; the County has not used that name for its housing department since approximately 2009. Additionally, the letter

Ms. Moss requested to be transferred to another Mod-Rehab unit prior to the November 2017 Notice. Finally, the abated HAP is not entirely related to the belongings in Ms. Moss' unit. In May 2018, the County found structural defects in the unit, including leaks and a large hole in the ceiling. These violations would have prohibited the County from paying the HAP while they existed.[7]

The Landlord's Motion for Relief from Stay is grounded upon Ms. Moss' liability for the monthly rent of $808. The Landlord seeks relief from stay so it can proceed in the pending eviction case and obtain a default final judgment based upon Ms. Moss' inability to deposit $3,122 into the court registry. The Landlord is not entitled to have the stay lifted to evict Ms. Moss for a debt she does not owe. As requested in the Motion for Relief, Ms. Moss sent her post-petition monthly rent of $223 for May through July to the Landlord's attorney. Ms. Moss requests that this Court deny the Landlord's Motion for Relief from Stay.

## RESPONSE TO OBJCTION TO CONFIRMATION

The Landlord objects to the Chapter 13 Plan because it does not include the abated HAP, and it asks this Court to deny confirmation because it fails to provide for the full rent of $808. Debtor agrees that the Chapter 13 Plan cannot be confirmed until this Court ultimately rules on her liability for the HAP, either through the Motion for Relief from Stay or her objection to the Landlord's Proof of Claim. Debtor will amend her plan to conform with the Court's ruling.

---

instructs tenants to request a "change of dwelling." This is a term of art used in the Section 8 Housing Choice Voucher program when a participant requests a new voucher to go search for new housing in the private market. For a Mod-Rehab tenant wanting to move, the County must make a specific offer to transfer to a new unit.

[7] Debtor agrees that the Landlord repaired these items by the inspection on June 25, 2018.

**ATTORNEY CERTIFICATION**

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of this Response was served via Notices of Electronic Filing on July 11, 2018, generated by the CM/ECF and served as follows:

**Served electronically:**

Nancy K. Neidich, Trustee
e2c8f01@ch13herkert.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Richard Robles, Esq.
rrobles@roblespa.com; nrossoletti@roblespa.com; vpuig@roblespa.com; rroque@roblespa.com; dgonzalez@roblespa.com; r49546@notify.bestcase.com

**Served by U.S. Mail on July 11, 2018:**

Jackson North Medical Center
PO Box 116699
Atlanta, GA 30368-6699

Resurgent Capital Service
PO Box 2568
Greenville, SC 29602-2568

North Shore Medical Center
1100 NW 95th Street
Miami, FL 33150

Respectfully submitted,

LEGAL SERVICES OF GREATER OF MIAMI, INC.

By /s/ Jeffrey M. Hearne
Jeffrey M. Hearne
Florida Bar No. 512060
Attorney for Debtor
4343 West Flagler Street, Suite #100
Miami, FL 33134
Phone and Facsimile: (305) 438-2403
Email: Jhearne@legalservicesmiami.org
Alt: SFreire@legalservicesmiami.org

Sharon!

RECEIVED

2012 APR -5 P 2:31

MDPHA
SPECIAL PROGRAMS

REV: 01/25/99
File: Section 8 Lease

BLDG. No.: 110

APT. No.: 84

Correction to move-in Sm.

## SECTION 8 LEASE AGREEMENT

This agreement made and entered into this 1 day of the month of April, 2012

Between Opa Property Management Corp. as LANDLORD, and Alteneez Moss, Social Security No.: [redacted], as TENANT.

**WITTNESSTH:**

**WHEREAS, LANDLORD has entered into a Housing Assistance Payment Contract with the Dade County Special Housing Assistance Programs Department (SHPD) and SHPD has an Annual Contribution Contract with the United States Department of Housing and Urban Development (HUD), which provides that SSHPD will pay a portion of the rent on behalf of qualified tenants pursuant to Section 8 of the Housing and Community Development Act of 1974, Public Law 93-383, 93rd Congress, August 30, 1974; and**

**WHERAS, SHPD has approved the monthly rental for the unit and has reviewed an Application for Tenant Eligibility and has certified that the Tenant is eligible for housing assistance payments in the amount shown in that latest approved Lease Addendum.**

**WHEREAS, the Section 8 Regulations provides that a re-examination of TENANT'S income shall be made every year, or as determined by the SHPD and HUD, and that the Housing Assistance Payment shall be adjusted by SHPDF to reflect income changes shown on the re-examination; and**

**WHEREAS, pursuant to the regulatory agreement with the LANDLORD, SHPD may approve adjustments in the monthly rent.**

**NOW THEREFORE,**

1. **The LANDLORD leases to the TENANT and the TENANT rents from the LANDLORD the dwelling unit located at:** 110 Dunad Ave #84 Opa-Locka Fl 33054, for a period beginning on the 1 day of the month of April, 2012 and ending on the 31 day of the month of March, 2013 at a monthly rate of $712.~~ . The rent shall be due on or before the FIRST day of each month. The total rent to be paid by the TENANT over the term of this Lease is $2508.00, or as adjusted by the Dade County SHPD.

Of the monthly rental, the Tenant agrees to pay as TENANT share the difference between the monthly rental and the Housing Assistance Payment to be made by SHPD pursuant to the Housing Assistance Payment Contract.

EXHIBIT
A
tabbies

Tenant further agrees, in the event the amount of monthly Housing Assistance payment is adjusted by the SHPD, as provided above, to pay in lieu of the amount specified in the preceding paragraph the difference between the monthly rental and the adjusted amount of Housing Assistance Payment. TENANT agrees to provide LANDLORD with a copy of the new addendum, which will be made a part of this lease, and to pay the new rent when it becomes effective.

The TENANT is responsible to immediately report any water leaks in the apartment to the LANDLORD.

2. Said rent will be payable monthly in advance or before the FIRST calendar day of each month, BY CASHIERS CHECK OR MONEY ORDER , mail to the Rental Office, to LANDLORD or to such other persons as the LANDLORD, from time to time, designates by written notice. The TENANT further agrees to pay and additional $25.00 rent for any rent payments made after the FIFTH day of the month plus $5.00 per day until entire rent is paid. All additional rent, any utility payment made on behalf of the TENANT, and TENANT damage shall be collected as rent. IF THE TENANT FAILS TO PAY HIS RENT, OR MAKE ACCEPTABLE PAYMENT ARRANGEMENTS ON OR BEFORE THE FIFTH OF THE MONTH EVICTION PROCEEDINGS WILL BE FILED AND THE TENANT WILL BE RESPONSIBLE FRO ANY AND ALL EXPENSES RELATED TO A LEGALLY UPHELD EVICTION PROCEEDING.

1. TENANT agrees that the family income, family composition and other eligibility requirements shall be deemed substantial and material obligations of his tenancy with respect to the amount of Housing Assistance Payment benefits, for which the TENANT is eligible and in determining TENANT'S share of the monthly rental.

2. TENANT agrees to comply within five days with all requests by the LANDLORD or SHPD for information and certification concerning the total current family income of the TENANT, the composition of the TENANT'S family and any other requirements that the LANDLORD or SHPD may require from time to time for occupancy.

3. TENANT agrees that the re-examination of income shall be made to SHPD every year, or as may be required by SHPD from time to time. If TENANT fails to appear to his annual re-certification the SHPD will cut his rental assistance and TENANT will be responsible for the full monthly rental payment to the LANDLORD.

4. The TENANT shall not assign this lease; give accommodations to any roomers, lodgers, or other person not listed in this paragraph; permit the use of the premises for any purpose other than as a private dwelling solely for the TENANT and his family, consisting of the following named persons:

| Full Name | Relationship | Date of Birth |
| --- | --- | --- |
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

5. **TENANT Obligation to REPAY.** If the TENANT submits incorrect, false or misleading information on any application, certificat on or request for interim adjustment or does not report interim changes in family income, and as a result, is charged a rent less than the amount required by SHPD's rent formulas; or TENANT does not appear to his annual re-certification and/or his rent assistance is cut, the TENANT agrees to reimburse and pay the LANDLORD for any income loss.

6. **General Restrictions.** The TENANT must live in the unit and the unit must be the TENANT'S only place of residence. The TENANT shall use the premises only as a private dwelling for himself or herself and the individuals listed on the Certification and RECERTIFICATION of TENANT Eligibility. Overnight visting guests of the TENANT are not allowed.

7. **Size of dwelling.** The TENANT understands that SHPD requires the LANDLORD to assign units according to size of the household and the age and sex of the household members. If the TENANT is or becomes eligible for a different size unit, and the required size unit becomes available, the TENANT agrees to:

   (a) Move within 7 days after the LANDLORD or SHPD notifies him or her that a unit of the required size is made available to the TENANT within Dade County.

8. The TENANT for himself and his heirs, executors and administrators agree as follows:

10.1 To pay the rent herein stated promptly when due, without any deduction whatsoever, and without any obligations on the part of the LANDLORD to make any demand for the same.

10.2To keep the premises, appliances and surroundings in a clean and sanitary condition and to comply with all laws, health and policy requirements with respect to said premises and appurtenances and to save the LANDLORD harmless from all fines, penalties and costs for violations or regulations, and from all liability arising out of any such violations or non-compliance.

10.3 Not to use the premises for any purpose deemed hazardous by the insurance companies carrying insurance herein.

10.4 Not to have any type of animals or pets in the premises in Family projects. Violation of this section will automatically cancel your Lease Agreement.

10.5 Not to install any exterior antenna or cable TV, without the prior written consent of the LANDLORD. The installation of any antenna on the roof of a building is a serious violation and will be ground for the termination of your Lease Agreement

10.6 To remove any and all items from the front and back yards or balconies of the units and building corridors and not to have, store, plant or maintain any items in the above areas. Any items found outside the unit will be considered LANDLORD property and will be removed immediately.

10.7 To have no appliance other than those provided by the OWNER, or approved in writing by the OWNER, the following appliance are prohibited and their physical presence in the unit will be ground for termination of this contract; WASHING MACHINES, DRYERS, or any type of PORTABLE HEATERS. Industrial sewing machines may be allowed by the OWNER provided that the TENANT will make at his own expense the electrical improvements required, such improvements will only be preformed by a licensed electrician acceptable to the OWNER and his previous written consent.

9. By signing this Agreement the TENANT acknowledges that the dwelling unit has been inspected by him/her and meets with the approval of the TENANT. The TENANT hereby acknowledges that said Premise is in good and satisfactory condition. The TENANT agrees that the LANDLORD has made no promises to decorate, alter, repair or improve the unit, except as listed in a written complaint by the TENANT and accepted by the LANDLORD. The TENANT agrees to notify the LANDLORD in writing within the first five (5) days of occupancy of any items that are in need of repair or which shall not be considered as damage caused by the TENANT. Failure to do so, notify the LANDLORD, will create the presumption that the dwelling unit is accepted as fully habitable and in good condition. The TENANT agrees to keep the dwelling unit in good clean condition; to make no alteration or addition affecting the dwelling unit; to replace all glass broken or cracked, caused by act or negligence of the TENANT, TENANT'S relative or his guest and, to surrender the dwelling unit at the termination hereof in like condition as when taken.

10. The TENANT agrees to give prompt written notice to the LANDLORD of any defect which may arise or become apparent in the unit in the future and acknowledges that LANDLORD cannot reasonably be expected to repair or correct conditions which are not reported to the LANDLORD. The TENANT agrees that, at the end of the occupancy hereunder, to deliver up and Surrender said premises o the LANDLORD in as good condition as when received, and that the following equipment and appliances have been received either new or in good working order:

| | | NEW | GOOD WORKING CONDITION |
|---|---|---|---|
| ONE | STOVE | | ✓ |
| ONE | REFRIGERATOR | | ✓ |
| ONE | WATER HEATER | | ✓ |
| ONE | SPACE HEATER | ✓ | |

This lease does not include any air conditioning unit. If there is and existing A/C unit in the apartment it will not be repaired or replaced upon its breakage, unless paid by the TENANT. The TENANT may at his/her own expense install an A/C unit subject to the LANDLORD'S policies relating to its installation, deposits, etc. Prior to its installation the TENANT must have a WRITTEN APPROVAL FROM THE LANDLORD.

11. No alterations, additions or improvements shall be made in or to the premises without the consent of the LANDLORD in WRITING and any alteration, additions or improvements whether approved or not by the LANDLORD WILL BECOME PART OF THE LEASE PROPERTY.

12. The TENANT agrees to park his/her automobile only in the paved parking spaces, if available or any other space that from the time the LANDLORD may assign to the TENANT. Cars that are parked on green areas, in front of any garbage container or garbage station, any entrance road or gate, or any other place other than the park[illegible] is prohibited and the vehicle will be towed away at the owner's expense. The parking of boats, trailers, commercial vehicles, trucks, cars with no license plate or expired license plate, cars that are mechanically inoperable, junked cars or abandoned vehicles anywhere on the property is prohibited and will be towed away at the owner's expense. AUTO

**REPAIRS, OR WASHING OF AUTOMOBILES ARE NOT PERMITTED ON THE PREMISES. The LANDLORD reserves the right to have any vehicle towed away, at the owner's expense, for the failure to comply with parking regulations. Any violation of the above parking rules will be considered a serious violation of your lease and will be ground for termination of your Lease Agreement.**

**14.1 On buildings where there are no parking facilities, the TENANT agrees to park his/her automobile in the public street at his/her own risk.**

13. **The TENANT agrees to make a deposit of $291.00 equivalent to a month gross family contribution, $50.00 to maintain the actual deposit whichever is greater again any damage, except reasonable wear, done to the premises by the TENANT his family, guests or agent; to pay when billed the full amount of any such damage in order that the deposit will remain intact. Upon termination of this lease, the deposit is to be refunded to the TENANT or to be applied to any such damage or any rent delinquency. The TENANT further agrees to give in writing <u>at least thirty (30) days</u> notice to the LANDLORD before vacating the unit, and agrees to reimburse the LANDLORD for any rents lost for his/her failure to notify the LANDLORD thirty days in advance of his/her move out.**

**15.1 The TENANT agrees to make an additional deposit in the amount of $30.00 as a key deposit. This deposit is in addition to the security deposit.**

14. **Damages. Whenever damage is caused by carelessness, misuse, neglect, or vandalism on the part of the TENANT, his/her family, visitors or burglars the TENANT agrees to pay:**

    (a) **The cost of all repairs and to do so within 7 days after receipt of the LANDLORD'S demand for the repair charges; and**

    **The TENANT agrees that his/her failure to make said payment will constitute a serious violation of this agreement and prima facie evidence for eviction. Sample of the cost of the most common damages can be found in Addendum No. 2.**

15. **Any legal action that might be necessary to be undertaken by the LANDLORD because of the TENANT'S defaults shall be in accordance with the laws covering the matter. The TENANT will be responsible for any damages and all legal expenses as assessed by a Court of Law.**

16. **Consumption of alcoholic beverages of any kind in the public areas is prohibited. The presence of any type of non-prescribed drugs or stimulants of any kind will be ground for termination of this Lease Agreement.**

17. **Meetings of any type on the public areas, such as parties, barbecues, political meetings, religious services, etc. is prohibited.**

18. **Door to door selling and any kind of propaganda within the premises is prohibited.**

19. **The TENANT is not allowed to make any disturbing noises in the premises by him, by his family, guests, visitors, etc. The TENANT will not permit anything by him, his family, agents, visitors, etc. that will interfere with the rights, comfort or convenience of other tenants. The TENANT shall not play not allow anyone to play any musical instrument or operate any radios, record player, and stereo equipment, television etc. in the premises if the same can be heard outside his/her unit. No TENANT shall conduct or permit to be conducted any vocal or instrumental instructions at any time. Any boisterous conduct, which shall disturb the peace and quiet of the premises, is absolutely prohibited. The TENANT shall not use or permit the use of the premises or any part thereof, for any unlawful,**

improper, immoral, disorderly or objectionable purposes, not commit, or permit the commission of a breach or nuisance thereon.

20. Access to Dwelling Unit:

(a) F.S. #83.53 (1). The TENANT shall not unreasonably withhold consent from the LANDLORD to enter the dwelling unit from time to time in order to inspect the premises; to make necessary or agreed repairs, decorations, alterations or improvements; to supply agreed services; or to exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors.

(b) F.S. #83.53 (2). The LANDLORD may enter the dwelling unit at any time for the protection or preservation of the premises. The LANDLORD may enter dwelling unit upon reasonable notice to the tenant and at a reasonable time for the purpose of repair of the premises. The LANDLORD may enter the dwelling unit when necessary for further purposes set forth in subsection (1) under any of the following circumstances:

- With the consent of the TENANT;
- In case of Emergency;
- When the TENANT unreasonably withholds consent;or
- If the TENANT is absent from the premises for a period of time equal to one half (1/2) the time for periodic rental payments. If the rent is current and the TENANT notifies the LANDLORD of an intended absence, then the LANDLORD may enter only with the consent of the TENANT or for the protection and preservation of the premises.

21. If the TENANT actually abandons the dwelling unit or if his/her conduct gives rise to the aforementioned presumption that he has abandoned the dwelling unit, the TENANT shall also be deemed to have abandoned all personal property contained in the dwelling unit in which event the title to the same shall vest immediately in the LANDLORD who shall be authorized to deal with the said property. The rights of the LANDLORD with respect to abandoned personal property as provided herein are intended to be cumulative of such rights and remedies as many, from time to time be provided by statute.

22. At the end of the tenancy, the TENANT shall vacate and surrender Premises to LANDLORD, broom clean, and in as good condition as they were at the beginning of the term, and TENANT shall remove all of TENANT'S property. All property, installations and additions required to be removed by TENANT at the end of the term which remain on the Premises after TENANT has vacated shall be considered abandoned by TENANT and title to same shall vest immediately in the LANDLORD as provided in Paragraph 23 above.

23. Failure of the LANDLORD to take any action against the TENANT for violation of any of the terms of this Lease shall not prevent a subsequent act of a simular nature from being a violation of the Lease. No act or agreement by the LANDLORD to accept surrender of the Premises from TENANT shall be valid unless in writing and signed by the LANDLORD.

24. The interruption or failure of any service required to be furnished to TENANT by LANDLORD shall not entitle TENANT to any allowance or reduction of rent, except as allowable by Law.

25. The agreements contained in this Lease Agreement and the addendum's constitute the entire understanding of the parties, and shall be binding upon, and shall insure to the benefit of the respective heirs, successors, assignees, and lega representatives of the parties hereto, and shall not be changed or terminated orally.

26. If TENANT has supplied information to LANDLORD by means of a rental application or simular instrument, TENANT covenants that all such information was given voluntarily and knowingly by TENANT, and if such information proves to be false or misleading it will constitute other good cause for termination of your tenancy and LANDLORD shall have the right to terminate the Lease. In case of bond-financed properties, TENANT hereby certifies the accuracy of the statements made in the certification of TENANT Eligibility and Income Verification (the"Certificate") previously executed, and further agrees that the family income, family composition and other eligibility set forth in the Certificate shall be deemed substantial and material obligations of his/her tenancy; that TENANT will comply promptly with all requests for information with respect thereto from LANDLORD or any Mortgagee; that TENANT'S failure to provide accurate information in the Certificate or TENANT'S refusal to comply with a request for information with respect thereto shall be deemed a default by the TENANT, which shall entitle LANDLORD to pursue all rights and remedies set forth above or otherwise or otherwise permitted by Law; and that TENANT'S failure to furnish accurate and current information in the Certificate could subject TENANT to Civil liability. TENANT further agrees that this Lease shall become null and void if it subsequently becomes known to LANDLORD that continuation of then TENANT'S occupancy will result in the interest of the bonds utilized to finance the construction of the Apartment Complex becoming subject to federa income taxation, or a violation of the state permitting the issuance of the Bonds.

27. Failure of the LANDLORD to insist upon the strict performance of the terms, covenants, agreements and conditions herein contained, or any of them, shall not constitute or be construed as a waiver or relinquishment of the LANDLORD'S rights thereafter to enforce any such term, covenant, agreement or condition, but the same shall continue in full force and effect.

28. The TENANT further agrees to accept and follow the Project Rules. Condition and Information incorporated into this agreement and attached as Addendum No. 1 and any and all future changes to the Project Rules, Conditions and Information that from time to time the LANDLORD will make subject to SHPD'S approval.

29. The TENANT agrees to indemnify and keep harmless LANDLORD from all losses, damages, liabilities, attorney's fees, costs and expenses which may arise or be claimed against LANDLORD and be in favor of any personal property of any person, firm or corporation, consequent upon, or arising from, the use or occupancy of said Premises by TENANT or consequent upon, or arising from any acts, omissions, neglect or fault of the TENANT, his agents, servants, employees, licensees, or invites.

30. The TENANT agrees not to :

a) sublet or assign the unit or any part of the unit;

b) use the unit for unlawful purposes;

c) engage in or permit unlawful activities in the unit, in the common areas or on the project grounds, including but not limited to: the sale or distribution of illegal drugs.

31. **Termination of Tenancy.** To terminate this Agreement, the TENANT must give the LANDLORD 30 days written notice before moving from the unit. If the TENANT does not give the full 30-day notice, the TENANT shall be liable for rent up to the end of the 30 days for which notice was required r to the date the unit is re-rented, whichever comes first.

a. The LANDLORDD may terminate the LEASE for any of the following reasons:

-Serious or repeated violation of the terms and Conditions of the Lease which include, but is not limited to , nonpayment of rent; failure to reimburse the LANDLORD within 7 days for repairs made under section 16 of this Agreement; repeated late payment of rent, permitting unauthorized persons to live in the unit; serious or repeated damage to the unit or common areas; creation f physical hazards; serious or repeated interference with the rights, comfort and convenience of other TENANTS; giving false information regarding income or other information considered in determining the TENANT'S rent, etc.

- Violation of applicable Federal, State or Local Law.

- Any other good cause, which includes but is not limited to the TENANT'S refusal to accept the LANDLORD'S future changes to this Agreement; material noncompliance with the terms of this Agreement; verbal or physical assault, or verbal insults of any kind to any of the LANDLORD'S employees, maintenance personnel or any inspector from SHPD, HUD, the City, County or State; not having his/her utilities connected, etc.

b. The Termination Notice must be in writing, dwelling delivered by first class mail or delivered to the family at the dwelling unit, and will indicate the date of termination and the reasons for such termination. All evictions will be made in accordance with Florida Law. If the termination is for other good cause, the date of termination will be 30 days after the notice is reserved. If LANDLORD institutes eviction procedures, the TENANT may present a defense in that proceeding.

c. If the LANDLORD proposes to terminate this Agreement, the LANDLORD agrees to give the TENANT written notice of the proposed termination. If the LANDLORD is terminating this agreement for 'other good cause', the termination notice must be received by the TENANT at least 30 days before the date the TENANT will be required to move from the unit. Notices of proposed termination for other reasons must be given in accordance with any time frames set forth in State and Local Law. Any SHPD required notice period may run concurrently with any notice period required with State and Local Law.

32. **Condemnation or Temporary Restrain.** It is agreed by and between LANDLORD and the TENANT that if the whole or such part of said dwelling unit hereby rented shall be taken by any competent authority for any public or quasi-public use or purpose, so as to materially affect tenant ability of TENANT'S apartment, then, and in that event, the term of this rental agreement shall cease ad terminate from the date when the possession of the part so taken shall be required for such use or purpose. All damages awarded for such taking shall belong to and be the property of the LANDLORD and the TENANT expressly disclaims any and all interest to the monies awarded for the taking of all or part of his/her property.

33. Property Damage. The TENANT agrees to move out at his own cost and expense anytime that the nature of repairs or improvements to the unit required them to do so. Also if the unit that you are renting becomes unfit for human occupancy as determined by SHPD, HUD, the City, County or State or any of its departments, due from the effects of a disaster such as fire, hurricane, or any other type of disaster, this lease agreement shall cease and terminate immediately and you must vacate the unit immediately. The TENANT also agrees to move out at his own cost and expenses any time the LANDLORD determines that termite treatment, or any other type of fumigation or version control must be applied to the unit.

34. Keys and Locks. The TENANT agrees not to install additional or different locks or gates on any doors or windows without the written permission of the LANDLORD. If the LANDLORD approved the TENANT'SS request to install such locks, the TENANT agrees to provide the LANDLORD with a key for each lock. When this agreement ends, the TENANT agrees to return all keys to the dwelling unit to the LANDLORD. The LANDLORD may charge the TENANT for each key not returned, plus the cost of installation of new locks.

35. Attachments to this agreement. The TENANT certifies that he/she has received a copy of this Agreement and the following attachments to this Agreement and understands that these attachments are part of this Agreement.

a. Attachment No. 1- Project Rules, Conditions and information.

b. Attachment No 2- Cost of most common tenant damages.

c. Attachment No 3- Form HUD-50059, Certification and Re-certification of TENANT Eligibility.

d. Attachment No 4- Unit Inspection Report.

36. Contents of this Agreement. This Agreement and its attachments make up the entire Agreement between the TENANT and the LANDLORD regarding the unit. If any Court declares a particular provision of this Agreement to be invalid or illegal, all other terms of this Agreement will remain in effect and both the LANDLORD and TENANT will continue to be bound by them.

IN WITNESSSS WHEREOF, the LANDLORD has hereunder caused this Section 8 Lease to be executed by its duly authorized and constituted agent and the TENANT has hereunto set his/her hand and seal on the day and year first above written.

It is understood and agreed that the terms LANDLORD and TENANT shall include the executors, administrators, successors, heirs and assigns of the parties hereto.

LANDLORD:

BY: [signature]

TITLE: Manager

TENANT:

X Ms. Altereez C. Moss



MIAMI-DADE
COUNTY

Carlos A. Gimenez, Mayor

Public Housing and Community Development
701 NW 1st Court - 16th Floor
Miami, Florida 33136

## Public Housing and Community Development Rent Change Notice Owner

3/1/2017

Opa Property Management Corporation
260 Dunad Ave
31A
OPA LOCKA, FL 33054 3876

RE: Section 8 Assistance for 110 Dunad Ave 84

Dear: Opa Property Management Corporation
We have recently completed a review of the annual income and household composition of the Alteneez C Moss family. The review has resulted in the following changes in the rent due to:

[X] Annual Certification [] Interim Certification [] New Admission [] Unit Transfer

| | |
|---|---|
| Total Contract Rent | 792.00 |
| Total Resident Rent | 223.00 |
| **Housing Assistance Payment** | **569.00** |
| Utility Reimbursement Payment | 0.00 |

These changes will become effective on **04/01/2017**. A copy of this letter has been sent to the resident, Alteneez C Moss, making her/him aware of the payment amounts and the effective date.

If you have any questions concerning this issue, please contact the Section 8 Office

Sincerely,

EXHIBIT
B
tabbies

**Public Housing and Community Development Rent Change Notice Owner**

3/12/2018

Opa Property Management Corporation
260 Dunad Ave
31A
OPA LOCKA, FL 33054 3876

RE: Section 8 Assistance for 110 Dunad Ave 84

Dear: Opa Property Management Corporation
We have recently completed a review of the annual income and household composition of the Alteneez C Moss family. The review has resulted in the following changes in the rent due to:

[X] Annual Certification [] Interim Certification [] New Admission [] Unit Transfer

| | |
|---|---|
| Total Contract Rent | 808.00 |
| Total Resident Rent | 223.00 |
| **Housing Assistance Payment** | **585.00** |
| Utility Reimbursement Payment | 0.00 |

These changes will become effective on **04/01/2018** . A copy of this letter has been sent to the resident, Alteneez C Moss . making her/him aware of the payment amounts and the effective date.

If you have any questions concerning this issue, please contact the Section 8 Office

Sincerely,

EXHIBIT C



MIAMI-DADE
COUNTY

Carlos A. Gimenez, Mayor

Public Housing and Community Development
701 NW 1St Court, 16th Floor
Miami, Fl 33136-3914
Phone: 786-469-4237 Fax: 786-469-4222
miamidade.gov/housing

Si necesita ayuda con esta carta, sirvase llamar al 786-469-4237
Si w bezwen yo ede w ak let sa a, tanpri rele 786-469-4237

October 23, 2017

Opa Property Management Corporation
Las Palmas Apts
260 Dunad Ave, 31A
OPA LOCKA, FL 33054

**Owner ID:** V00004620

Re: Notice of annual re-inspection to owner

Dear Section 8 Owner/Landlord,

A(n) **annual** inspection (Insp ID: 361998) was made in your **Mod-Rehab** property (Unit ID: 0117430) located at **110 Dunad Ave #84, OPA LOCKA, FL 33054 on 10/18/17**, which is currently under Section 8 contract. The **inspection status** was **clasified** as **a(n) failed**. The property is in violation of the Housing Quality Standards (HQS) as set by US HUD. Pursuant to revised federal regulations, violations are now determined to be either tenant or owner caused as shown on the attached report.

You should be aware that your Section 8 Lease Agreement and the regulations for the Housing Program provides for the mutual obligations of both tenant and owner to keep the unit and surrounding premises in a decent, safe and sanitary manner. A re-inspection on the **annual** inspection type condition(s) previously found will be made on **11/17/17** between **8:00** am and **5:00** pm to confirm that these violations have been corrected.

**Note: To complete this annual inspection, it will be necessary for an adult (18 years of age or older) to be present at the time of the inspection.**

If the owner-caused violations in the unit, as cited in the attached report, are not corrected or the inspector is unable to gain access to verify correction by 11/17/17, then your subsidy payments on behalf of the tenant in the Section 8 program will be terminated as of the compliance date in this letter and the tenant is entitled to a change of dwelling.

**Español**: Una inspección ha sido programada para el dia **11/17/17** entre las **8:00** am y las **5:00** pm. Es mandatario que una persona mayor de 18 años de edad este presente para la inspección.

**Kreyol**: N'ap Fe yon enspeksyon le **11/17/17, 8:00** am - **5:00** pm. Fo'ou genyen yon granmoun nan kay-la le enspeksyon-a.

Sincerely,

Special Housing Programs
Miami-Dade Housing Agency

cc: Resident and Inspection File

Alteneez C Moss
110 Dunad Ave #84
OPA LOCKA, FL 33054

**Inspection ID:** 361998
**Resident ID:** 000079509

EXHIBIT
tabbies
D

Carlos A. Gimenez, Mayor

Public Housing and Community Development
701 NW 1St Court, 16th Floor
Miami, Fl 33136-3914
Phone: 786-469-4237 Fax: 786-469-4222
miamidade.gov/housing

## UPCOMING INSPECTION SUMMARY

Inspection: 361998
Inspector: Santos, Jose
Census Tract:
Unit ID: 0117430
Mod-Rehab: Yes
Unit Address: 110 Dunad Ave #84
OPA LOCKA, FL 33054

Type: Annual
Move In: 04/01/12
Move Out:
Resident: Alteneez C Moss
Resident ID: 000079509
Owner: Opa Property Management Corporation
Owner ID: V00004620

Corrections Due Date: 11/17/17 Previous Inspection Date: 10/18/2017 Previous Results: Failed

Inspection Note(s): (498954)

**Owner Responsibility** Item(s) Count: 3

**BATHROOM**

| Responsibility | Checklist Description | Floor & Location | Result | Emergency | Health Hazard | Days to Reinspect |
|---|---|---|---|---|---|---|
| Owner | Wall Condition | | Fail | | No | 27 |

Complete ✓ Comments: WA-DETERIORATED WALL; WA-WALL SHOWS SIGNS OF WATER LEAK/WATER SEEPAGE.

**GENERAL HEALTH AND SAFETY**

| Responsibility | Checklist Description | Floor & Location | Result | Emergency | Health Hazard | Days to Reinspect |
|---|---|---|---|---|---|---|
| Owner | Refuse Disposal | | Fail | | No | 27 |

Tenant Comments: PR-REMOVE THE EXCESSIVE ACCUMULATION OF TRASHAND DEBRIS.(FIRE HAZARD)

tenant failed

**KITCHEN**

| Responsibility | Checklist Description | Floor & Location | Result | Emergency | Health Hazard | Days to Reinspect |
|---|---|---|---|---|---|---|
| Owner | Stove or Range with Oven | | Fail | | No | 27 |

Complete ✓ Comments: KI-DEFECTIVE STOVE BURNER/S

All trash + debris are her personal belongings.
- maint. staff will not remove

Alteneez C Moss
110 Dunad Ave #84
OPA LOCKA, FL 33054

Inspection ID: 361998
Resident ID: 000079509



MIAMI-DADE
COUNTY

Carlos A. Gimenez, Mayor

Public Housing and Community Development
701 NW 1st Court, 8th Court
Miami, Fl 33136
Phone: 786-469-4237 Fax: 786-469-4222
miamidade.gov/housing

Si necesita ayuda con esta carta, sirvase llamar al 786-469-4237
Si w bezwen yo ede w ak lot sa a, tanpri relo 786-469-4237

November 20, 2017

Opa Property Management Corporation (V00004620)

Las Palmas Apts
260 Dunad Ave 31A
OPA LOCKA, FL 33054

Re: Notice of Failed Reinspection and Unit Abatement

Dear Section 8 Owner/Landlord,

A(n) **annual** inspection (Insp ID: 361998) was made in your **Mod-Rehab** property (Unit ID: 0117430) located at **110 Dunad Ave, 84OPA LOCKA, FL 33054** on **11/17/17**, which is currently under Section 8 contract. The **inspection status** was **classified as a(n) final fail.** The inspector found that condition(s) still exists at the unit which violate Housing Quality Standards (HQS) as set forth by the United States Department of Housing and Urban Development (US HUD).

You were made aware that your Section 8 Lease Agreement and the regulations for the Housing Program provides for the mutual obligations of both tenant and owner to keep the unit and surrounding premises in a decent, safe and sanitary manner. Because **persistent violations in the unit (refer to attached checklist) were not corrected on 11/17/2017**, subsidy payments were stopped as of **11/17/17**.

If any of the violations shown are owner's responsibility then the tenant is entitled to request a change of dwelling within 21 days starting **11/17/17**. If the tenant does not contact MDHA within this period and remains at the above mentioned unit, they will be responsible for the full contract rent.

If any of the violations shown are the tenant's responsibility then the tenant will be recommended for termination from the Section 8 program. A forthcoming notice addressed to the tenant, will inform the rights to request a hearing and appeal this matter in accordance with the grievance procedures established for the Section 8 Housing Program. HAP payment(s) will continue to the owner for a period of sixty (60) days from the date failed inspection, or from the date the owner completes the eviction process, whichever comes first.

Sincerely,

Special Housing Programs
Miami-Dade Housing Agency

cc: Resident, Inspection File, Section 8 Operations Department, Section 8 Accounting Department

Altenceez C Moss (000079509)
110 Dunad Ave 84
OPA LOCKA, FL 33054

EXHIBIT
E
tabbles



Carlos A. Gimenez, Mayor

Public Housing and Community Development
701 NW 1st Court, 8th Court
Miami, Fl 33136
Phone: 786-469-4237 Fax: 786-469-4222
miamidade.gov/housing

## INSPECTION SUMMARY

Inspection: 361998
Inspector: Santos, Jose
Census Tract:
Unit ID: 0117430
Mod-Rehab: Yes
Unit Address: 110 Dunad Ave 84
OPA LOCKA, FL 33054

Type: Annual
Move In: 04/01/12
Move Out:
Resident: Alteneez C Moss
Resident ID: 000079509
Owner: Opa Property Management Corporation
Owner ID: V00004620

Inspection Note(s): (498954)

Due Date:

Inspection Date: 11/17/17

Results: Final Fail

Ownr&Rsdnt Responsibility

GENERAL HEALTH AND SAFETY

Items Count: 1

| Responsibility | Checklist Description | Floor & Location | Result | Emmergency | Health Hazard | Days to Reinspect |
|---|---|---|---|---|---|---|
| Ownr&Rsdnt | Refuse Disposal | | Fail | No | No | 27 |

Comments: PR-REMOVE THE EXCESSIVE ACCUMULATION OF TRASHAND DEBRIS.(FIRE HAZARD)

Si necesita ayuda con esta carta, sirvase llamar al 786-469-4237
Si w bezwen yo ede w ak let sa a, tanpri rele 786-469-4237

November 20, 2017

Opa Property Management Corporation (V00004620)

Las Palmas Apts
260 Dunad Ave 31A
OPA LOCKA, FL 33054

Re: Notice of Failed Reinspection and Unit Abatement

Dear Section 8 Owner/Landlord,

A(n) annual inspection (Insp ID: 361998) was made in your Mod-Rehab property (Unit ID: 0117430) located at 110 Dunad Ave, 84OPA LOCKA, FL 33054 on 11/17/17, which is currently under Section 8 contract. The inspection status was classified as a(n) final fail. The inspector found that condition(s) still exists at the unit which violate Housing Quality Standards (HQS) as set forth by the United States Department of Housing and Urban Development (US HUD).

You were made aware that your Section 8 Lease Agreement and the regulations for the Housing Program provides for the mutual obligations of both tenant and owner to keep the unit and surrounding premises in a decent, safe and sanitary manner. **Because persistent violations in the unit (refer to attached checklist) were not corrected on 11/17/2017**, subsidy payments were stopped as of 11/17/17.

<u>If any of the violations shown are owner's responsibility</u> then the tenant is entitled to request a change of dwelling within 21 days starting **11/17/17.** If the tenant does not contact MDHA within this period and remains at the above mentioned unit, they will be responsible for the full contract rent.

<u>If any of the violations shown are the tenant's responsibility</u> then the tenant will be recommended for termination