*Tagged Opinion*



**ORDERED in the Southern District of Florida on January 9, 2019.**

Laurel M. Isicoff
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

Alteneez Moss,   Case No.18-15361-LMI

                 Chapter 13

      Debtor.
_____/

**MEMORANDUM OPINION ON DEBTOR'S OBJECTION TO CLAIM AND
LANDLORD'S MOTION FOR RELIEF FROM STAY**

This matter came before the Court on October 25, 2018 on the Motion for Relief from Automatic Stay (the "Stay Relief Motion") (ECF #18) filed by Opa Property Management Corp. (the "Landlord") and the Objection to Claim (the "Claim Objection") (ECF #26) filed by the Debtor, Alteneez Moss (the "Debtor"), objecting to the proof of claim filed by the Landlord. The Court has considered the evidence at trial including the testimony of witnesses, as well as the

closing arguments and memoranda of law filed by the Landlord and the Debtor[1]. Based on all the foregoing, the Court shall grant stay relief, although not exactly the relief sought in the Stay Relief Motion, and shall sustain the Claim Objection.[2]

## FACTS AND PROCEDURAL HISTORY[3]

The Landlord is the owner of real property located at 110 Dunad Avenue, Unit 84, Opa-Locka, Florida 33054 (hereinafter "Property"), and the Debtor is the tenant at the Property. On or about April 1, 2012, Landlord and Debtor entered into a Section 8 Lease Agreement for the rental of the Property (the "Lease"). The Landlord drafted the Lease. The Debtor's occupancy of the Property is governed under the Moderate Rehabilitation Program (the "Mod-Rehab Program"). A portion of the rent due under the Lease is paid by the Debtor and a portion is paid by Miami-Dade County Housing Agency ("MDCHA") in the form of a Housing Assistance Payment (hereinafter "HAP"). MDCHA serves as a public housing agency ("PHA"), as described by the applicable Mod-Rehab Program regulations.

On or about October 18, 2017, the MDCHA conducted its annual inspection of the Property. It found three (3) violations of the Housing Quality Standards set by the United States Department of Housing and Urban Development ("HUD"). These violations were: 1) a deteriorated wall, which showed signs of water leaks and/or water seepage; 2) defective stove burners; and 3) an excess accumulation of trash and debris, which created a fire hazard. The MDCHA notified the parties of the violations in a letter dated October 23, 2017. This letter provided that a re-inspection would be conducted on November 17, 2017. On or about November

---

[1] Landlord's Written Closing Statement and Memorandum of Law (ECF #69); Debtor's Closing Argument (ECF #70); Landlord's Response to the Debtor's Written Closing Statement and Memorandum of Law (ECF #73); and Debtor's Response to Landlord's Closing Argument (ECF #74).
[2] Separate orders will be entered simultaneous with this Memorandum Opinion.
[3] The following constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 made applicable to this contested matter pursuant to Fed.R.Bankr.P. 7052.

17, 2017, the MDCHA conducted its re-inspection on the Property. At that time, it found that the deteriorated wall and defective stove burners had been repaired and in compliance with the necessary standards. However, the excess accumulation of trash and debris creating a fire hazard had not been corrected. As such, MDCHA issued a final fail notice on the unit and stopped paying its portion of the total contract rent (the "HAP Portion") on November 17, 2017.

On or about May 25, 2018, the MDCHA conducted a re-inspection of the Property. At that inspection, the MDCHA found five (5) violations, which were as follows: 1) the ceiling showed signs of leaks/water seepage; 2) egress to the unit was blocked by the Debtor's belongings; 3) the Unit was cluttered and difficult to move around in due to the excess amount of the Debtor's belongings; 4) a defective light fixture; and 5) a missing portion of the ceiling with no leak. Joint Exhibit Register, Exhibit "7". Once again, a follow-up inspection was set on June 25, 2018 to verify that the issues had been corrected. Upon re-inspection of the premises, all violations had been cured with the exception of violations relating to the clutter and blockage of the entry and exit due to the excess amount of the Debtor's belongings. The Property again failed the inspection, and therefore MDCHA continued to abate the HAP Portion.

On or about October 17, 2018, MDCHA conducted another re-inspection of the Property. The inspection found three (3) violations - 1) the inspector was unable to perform an inspection due to the amount of personal belongings blocking the walkway, walls and unit exits causing a fire hazard to the tenant and neighbors; 2) the unit was not being maintained in a clean and proper manner; and 3) there was a damaged door lock in the living room. Jason Selesky, the Landlord's on-site property manager, testified, without contradiction, that the damaged door lock had been repaired as of the date of the hearing. There was no evidence that the other violations, both related to the Debtor's excess belongings, have been corrected.

The Landlord has not received full contract rent on the Property since November 17, 2017. The Debtor and the Landlord have received multiple notices of the violations from MDCHA. Despite the indication on the notices that the violations are the Landlord's responsibility, it is undisputed between the parties that the Landlord cannot unilaterally remove any personal property of the Debtor from her home pursuant to Florida law or the Mod-Rehab Program regulations. Nonetheless, MDCHA will continue to abate the HAP Portion until the clutter is removed.

The Landlord instituted eviction proceedings for non-payment of rent (the "Eviction Action")[4]. The Landlord argued that, in accordance with the terms of the Lease, the Debtor is required to pay the full amount of rent under the Lease, including the HAP Portion, due to her failure to clean up the Property. The Landlord gave the required notice under Florida law for a lease default arising from non-payment of rent. After hearing, and over the objection of the Debtor, the judge in the Eviction Action ordered that, as a condition of the Debtor continuing to fight the Eviction Action, the Debtor would be required to pay the full Lease amount, including the HAP Portion, into the state court registry.[5] In response, the Debtor filed this Chapter 13 case.

The Debtor has continued to pay her portion of the rent under the Lease during the Chapter 13 case.[6] The Landlord has objected to the Debtor's Chapter 13 plans, the most recent being the Second Amended Plan (the "2AP")(ECF #34), because the Debtor does not propose to pay in full the total amount the Landlord claims is owing for back rent[7]. The Debtor counters that legally she is not required to pay the HAP Portion either under the terms of the Lease or applicable law.[8]

---

[4] Case No. 18-1830-CC-23 – Miami Dade County Court for the Eleventh Judicial Circuit for the State of Florida.
[5] Under Florida law a tenant is required to deposit rent into the court registry as a condition precedent to defending an eviction action. Fla. Stat. §83.60(2).
[6] By agreement those payments are being made to the Landlord's attorney.
[7] The Landlord filed Proof of Claim 1-1 in the amount of $3,930 for back rent, to which claim the Debtor objected.
[8] The Court ruled on October 25, 2018 that the Debtor was not barred by *collateral estoppel* by the order in the Eviction Action from contesting her obligation to pay the HAP Portion in her chapter 13 plan or post-petition since the issue before the state court judge was not a final adjudication on the merits of the Landlord's argument, but rather only an adjudication of the required deposit necessary under Fla. Stat §83.60(2) to defend the Eviction Action.

Based on the Debtor's failure to pay the full amount of rent that the Landlord claims is due and owing, both pre-petition and post-petition, the Landlord seeks relief from stay to continue with the eviction action.

## LEGAL ANALYSIS

### A. The Debtor is not liable for the abated HAP

The Landlord argues that the Lease, as well as a letter from MDCHA, clearly provide that the Debtor is liable for the HAP Portion of the rent. The Lease, drafted by the Landlord, provides that the Debtor is liable to pay her portion of the rent at a stated dollar amount that was set by MDCHA or "as adjusted by the Dade County SHPD."[9] The Landlord argues that the abatement of payment of the HAP Portion by the MDCHA is, in fact, an "adjustment" of the rent, meaning that based on that "adjustment" to zero, the Debtor is required to pay the balance. However, an abatement is not an adjustment. The adjustment to which the Lease refers clearly relates to adjustments in the proportion of rent paid by MDCHA or by the Debtor unrelated to abatement of rent; abatement is covered by a different set of circumstances, as evidenced by the applicable regulations. This difference is underscored by the fact that MDCHA sent a notice to the Landlord that, for 2017, the Debtor's rent would be $223 a month and the Landlord would be paid $569 a month as the HAP Portion. In April 2018, while the HAP remained in abatement, the County increased the HAP Portion to $585 and the Debtor's portion of the rent remained at $223.[10]

---

[9] "Tenant further agrees, in the event the amount of monthly Housing Assistance payment is adjusted by the SHPD, as provided above, [t]o pay in lieu of the amount specified in the preceding paragraph the difference between the monthly rental amount and the adjusted amount of Housing Assistance Payment. Tenant agrees to provide LANDLORD with a copy of the new addendum, which will be made a part of this lease, and to pay the new rent when it becomes effective. [sic]."

[10] The Debtor argues that if there is an ambiguity in the Lease regarding liability for the HAP Portion, that ambiguity should be construed against the drafter – the Landlord. *See Washington Nat. Ins. Corp. v. Ruderman*, 117 So.3d 943, 955-56 (Fla. 2013).

Moreover, the Mod-Rehab Program regulations specifically provide that violations, even if caused by the tenant, do not trigger liability of the tenant for any HAP payments. Landlords in the Mod-Rehab Program must maintain decent, safe, and sanitary housing. *See* 24 C.F.R. § 882.404(a) and 24 C.F.R. § 5.703. All inspection violations in the Mod-Rehab Program are the responsibility of the landlord. *See* 24 C.F.R. §882.404(a) and 24 C.F.R. §5.703 (Mod-Rehab Program regulations). 24 C.F.R. § 882.516(c) is the Mod-Rehab Program regulation that describes what happens when a unit fails an inspection -

> **Units not decent, safe and sanitary.** If the PHA notifies the Owner that the unit(s) under Contract are not being maintained in decent, safe and sanitary condition and the Owner fails to take corrective action (***including corrective action with respect to the Family where the condition of the unit is the fault of the Family***) within the time prescribed in the notice, the PHA may exercise any of its rights or remedies under the Contract, including abatement of housing assistance payments (even if the Family continues in occupancy), termination of the Contract on the affected unit(s) and assistance to the Family in accordance with § 882.514(e).

(*emphasis supplied*). Any lease agreement for a tenant in the Mod-Rehab Program must be read and interpreted consistently with the HUD regulations because the lease cannot "include any provisions prohibited by HUD." 24 C.F.R. § 882.511(a)(1). If the Landlord were correct, and the Lease required the Debtor to pay the HAP Portion during abatement, the Lease would be inconsistent with the provisions of the regulations.

Mr. Silva, an inspector with Miami-Dade County, testified at the hearing that because of the Mod-Rehab Program regulations, inspection violations are always designated the responsibility of the landlord. Every inspection report, other than the November 20th inspection report, bears this out and the County always deemed the Landlord responsible for the clutter. Mr. Silva testified that the November 20th Notice, which attributed the violation to both the Landlord and the Debtor, was a mistake and should have been designated only as an owner violation. All the subsequent inspection notices had the correct designation.

6

When an inspector finds a violation in the unit and the unit fails the inspection, the regulation instructs a landlord to take "corrective action with respect to the Family" when the unsafe condition is caused by the tenant. *See* 24 C.F.R. §882.516 (c). The regulation also gives the PHA the ability to abate the HAP "even if the Family continues in occupancy." *See* 24 C.F.R. §882.516 (c). While this does not leave the Landlord without a remedy, there is nothing in the regulation making the Debtor personally liable for the abated HAP Portion.

The Mod-Rehab Program regulation gives MDCHA several options when there is a violation in the unit. Here, the County chose to abate the HAP to the Landlord, even though the Debtor remained in possession of the unit. As Yvette Cunningham, an employee with MDCHA testified, MDCHA did not terminate the Debtor's participation in the Mod-Rehab Program and, to the date of the trial, at least, the Debtor remained an active participant.

The Landlord also pointed to notices sent to the Landlord and the Debtor by the MDCHA which state that the Debtor could become responsible for the full rent. *See* Joint Exhibit Register, Exhibit "7" ("If any of the violations shown are the owner's responsibility, then the tenant is entitled to request a change of dwelling within 21 days starting 11/17/17. If the tenant does not contact MDHA [sic] within this period and remains at the above-mentioned unit, they will be responsible for the full contract rent."). However, a notice from MDCHA to the Landlord cannot create liability that does not exist under the Lease or the federal regulations. Ms. Cunningham testified that language in the notice is incorrect since the Debtor is not responsible for the HAP under the federal regulations. She also testified that MDCHA is in the process of changing its forms to remove this incorrect language from the notices.

Consequently, the Court holds that the Debtor is not liable for the HAP Portion, either pre-petition or post-petition and therefore, the Claim Objection is SUSTAINED.

**B. The Landlord is entitled to stay relief**

While the Debtor is not in monetary default of the Lease, the Debtor is clearly in non-monetary default. The Lease provides that the Debtor must maintain the Property in good and safe condition –

> 8.  The Tenant for himself and his heirs, executors and administrators agree as follows:
>
> ….
>
> 10.2   To keep the premises, appliances and surroundings in a clean and sanitary condition and to comply with all laws, health and policy requirements with respect to said premises and appurtenances and to save to LANDLORD harmless from all fines, penalties and costs for violations or regulations, and from all liability arising out of any such violations or non-compliance.[11]

Paragraph 9 of the Lease repeats - "The Tenant agrees to keep the dwelling unit in good clean condition…". There is no dispute that the Debtor has not maintained the Property in good condition; indeed, according to the October 17, 2018 inspection, the clutter at the Property is "causing a fire hazard to the tenant and neighbors". This cannot continue. Not only is the Debtor creating a hazard for herself, she is putting her neighbors in danger.

Consequently, although the Landlord is not entitled to stay relief to pursue eviction on the basis of the alleged monetary default, the Landlord may have immediate stay relief, with no 14-day stay, to pursue the Landlord's remedies available due to this non-monetary default. In fact, the Debtor concedes that the Landlord has the right to seek eviction on this basis. The only dispute

---

[11] As discussed on the record during hearing, the Lease Agreement has a numbering issue such that the subsections of Paragraph 8 are numbered 10.1 through 10.7.

between the Debtor and the Landlord is whether, under non-bankruptcy law, the Landlord can amend its notice and pleadings in the pending Eviction Action, or whether the Landlord must start over. That is an issue for the state court, not this Court, but the Landlord may do better just starting over rather than litigating in state court these disputed procedural issues.

## CONCLUSION

The Debtor has proven under applicable law that she is not liable for the abated rent. However, the Landlord has demonstrated its right to immediate stay relief to pursue its remedies for the non-monetary defaults. Separate orders will be entered consistent with this Memorandum Opinion.

# # #

Copies furnished to

Jeffrey M Hearne, Esq
Nicholas G. Rossoletti, Esq.

*Attorney Hearne shall serve a copy of this order upon all interested parties and shall file a Certificate of Service of same with the Clerk of the Court.*